UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HOWARD CARR COMPANIES,
INC., doing business as Howard
Group,

      Plaintiff,

   -v-            1:18-CV-1414

CUMBERLAND FARMS, INC.,
and FIRST HARTFORD REALTY
CORPORATION,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:          OF COUNSEL:

OFFICE OF JEFFREY L. ZIMRING   JEFFREY L. ZIMRING, ESQ.
Attorneys for Plaintiff
1735 Central Avenue, Suite 200
Albany, NY 12205

FARRELL FRITZ P.C.        DANIEL RUBIN, ESQ.
Attorneys for Defendants
19 Dove Street, Suite 202
Albany, NY 12210

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

  Plaintiff Howard Carr Companies, Inc. ("the Howard Group" or "plaintiff") initially filed this action in Supreme Court, Albany County, against defendants Cumberland Farms, Inc. ("Cumberland") and First Hartford Realty Corporation ("First Hartford") (collectively

"defendants") alleging defendants failed to pay certain real estate commissions valued at approximately $1 million.

On December 4, 2018, defendants removed the suit to federal court. Thereafter, defendants moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the Howard Group's complaint. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

The following facts are taken from the Howard Group's operative pleading, Dkt. No. 2, and are assumed true for the purpose of resolving defendants' motion to dismiss.

The Howard Group is a New York corporation that operates a commercial real estate brokerage out of its office in Albany, New York. Compl. ¶¶ 1-3. Cumberland operates a chain of convenience stores from its corporate headquarters in Framingham, Massachusetts, while First Hartford is a commercial real estate developer based in Manchester, Connecticut. Id. ¶¶ 4-9. Defendants are both incorporated in Delaware. Id.

In June of 2013, defendants "engaged" the Howard Group "for the purpose of locating potential sites" on which Cumberland could build and operate convenience stores. Compl. ¶¶ 12-13. Thereafter, plaintiff identified "at least" 126 sites in New York, Massachusetts, and Connecticut that satisfied defendants' stated criteria. Id. ¶¶ 14-16.

According to the Howard Group, Cumberland has since acquired the rights to, and has built, or intends to build, new convenience stores on "at least ten" of the sites identified by

plaintiff.¹  Compl. ¶ 18.  Plaintiff alleges that it expected payment for these services in the amount of $1,116,446.00, but to date has been paid only $71,625.  Id. ¶¶ 21-22.

## III. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims."  Id.

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor."  Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) (Baxter, M.J.).  In making this determination, a court generally confines itself to the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken."  Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

## IV. DISCUSSION

Defendants offer three reasons why the Howard Group's complaint must be dismissed.  First, defendants contend plaintiff has failed to comply with New York Real Property Law ("RPL") § 442-d, which precludes unlicensed brokerages from pursuing unpaid commissions through civil suits.  Second, defendants argue plaintiff has failed to identify the essential terms of any alleged brokerage agreement between the parties.  Third, defendants

---

¹ It is unclear whether these ten sites are located New York, Massachusetts, and/or Connecticut.  See Compl. ¶ 18.

maintain that any attempt by plaintiff to recover in quasi-contract should be considered duplicative of its apparent breach of contract claim.

The Howard Group responds by insisting that defendants have "completely misconstrued" the nature of its claim for relief. Plaintiff explains that it "does not claim to have entered into an agreement with the defendants that provides for real estate commissions," written or otherwise. Pl.'s Mem. at 4, 6.[2] Instead, plaintiff argues it is seeking relief under the principle of quantum meruit for the "reasonable value" of services it rendered on behalf of defendants; i.e., its identification of potential locations for Cumberland-branded convenience stores. Id. at 4. According to plaintiff, it "anticipated such compensation would be in the form of real estate commissions paid by the owners of the sites identified for the defendants when the defendants actually acquired the sites." Id.

Defendants reply that the Howard Group cannot evade the brokerage licensure requirement imposed by RPL § 442-d by casting its claim in quantum meruit rather than breach of contract. And even if plaintiff could, defendants argue that plaintiff's "admission that it performed the claimed services without any expectation of compensation" directly from defendants themselves would nevertheless be fatal to such a claim. Defs.' Reply at 5.

"*Quantum meruit* is a doctrine of quasi contract." Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir. 1994). In other words, it is "an equitable remedy that is awarded when the circumstances are such that equity and good conscience require the defendant to make restitution." Aniero Concrete Co. v. N.Y. City Constr. Auth., 308 F. Supp. 2d 164, 179 (S.D.N.Y. 2003) (citation omitted). Accordingly, a claim for quantum meruit "do[es] not hinge

---

[2] Pagination corresponds to CM/ECF.

- 4 -

on the existence of an agreement, oral or otherwise."  R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 60 (2d Cir. 1997).  Rather, under certain circumstances "the performance and acceptance of services gives rise to the inference of an implied contract to pay for the reasonable value of such services."  Farina v. Bastianich, 984 N.Y.S.2d 46 (N.Y. App. Div. 2d Dep't 2014).

To establish a claim for quantum meruit under New York law,[3] the plaintiff must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."  Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (citation omitted).

Accepting as true the complaint's factual allegations, the Howard Group has sufficiently established the first, second, and fourth elements of its claim for quantum meruit.  However, defendants contend plaintiff cannot establish the "expectation of compensation" element because the complaint does not allege a reasonable expectation that compensation would come from *defendants themselves*.  See Defs.' Reply at 9 ("[Plaintiff] does not allege it expected to receive compensation directly from Defendants, or that Defendants ever promised to compensate [plaintiff]").

This argument has some logical appeal, since the mine-run of quantum meruit cases involve a plaintiff seeking to recover the fair value of services rendered directly to a neglectful defendant, often a former client.  Bretillot v. Burrow, 2015 WL 5306224, at *17-*18, *22

---

[3] The parties are here on diversity jurisdiction, 28 U.S.C. § 1332(a)(1), and assert that New York law applies.  The Court agrees.  Cf. Lantheus Med. Imaging, Inc. v. Zurich A. Ins. Co., 255 F. Supp. 3d 443, 452 n.9 (S.D.N.Y. 2015) (applying forum law where "neither party assert[ed] that there [was] a meaningful difference between the two jurisdictions' laws with respect to the instant dispute" and collecting cases approving of this approach).

(S.D.N.Y. June 30, 2015) (Report & Recommendation) (collecting cases), adopted by 2015 WL 6455155 (S.D.N.Y. Oct. 26, 2015).

But New York does not limit quantum meruit relief to only those straightforward circumstances. Two cases illustrate the point. In the first, Curtis Props. Corp. v. Greif Cos., 628 N.Y.S.2d 628 (N.Y. App. Div. 1st Dep't 1995), the plaintiff real estate broker contracted with three apparel companies for the "exclusive" right to renegotiate their commercial leases. Id. As relevant here, the parties agreed the broker's compensation would be an amount paid by the seller or lessor "on the consummation of a transaction." Id.

Despite the plaintiff broker's significant own efforts, the defendant apparel companies later commenced their own, direct lease negotiations with the landlord. Curtis Props. Corp., 628 N.Y.S.2d at 628. When these direct negotiations resulted in an agreement between the defendant companies and the landlord, the plaintiff broker was deprived of its opportunity to collect on its commissions. Id.

The plaintiff broker sought relief in quantum meruit from the defendant apparel companies. Curtis Props. Corp., 628 N.Y.S.2d at 628. In permitting the plaintiff's quantum meruit claim to proceed, the Appellate Division observed that the defendants acknowledged that the plaintiff broker's efforts and strategy had conferred *some* benefit on them during the lease negotiations. Id.

The Appellate Division reached a similar conclusion in Joseph Sternberg, Inc. v. Walber 36th St. Assocs., 594 N.Y.S.2d 144 (N.Y. App. Div. 1st Dep't 1993). There, the plaintiff broker agreed to facilitate an investor's purchase of an office building for $11.5 million on the condition that the broker's commission would be paid by the seller. Id. Despite the broker's own efforts, the investor later entered into direct negotiations with the seller and

arranged to purchase the building for $10.6 million. Id. When the investor refused to pay the broker any commission in connection with this sale, he sued in quantum meruit. Id. The First Department allowed the claim to proceed against the investor because, inter alia, the parties' express contract did not contemplate whether the plaintiff broker would be entitled to a commission "in the event a sale occurred for a lesser price." Id.

The circumstances are similar here. Defendants correctly point out that the Howard Group, in its opposition memorandum, indicates that it expected its commissions would come from an entity or entities *other* than Cumberland and First Hartford, the two defendants actually named in this suit. Defs.' Reply at 9 ("[Plaintiff] performed its claimed services with the expectation that it would be compensated by the owners of the properties, *not* Defendants.").

However, Curtis and Walber both suggest that a plaintiff may pursue a claim in quantum meruit even where the plaintiff rendered services that benefitted one party, the defendant, with the initial expectation of compensation from a different party, a non-defendant. After all, quantum meruit is a doctrine focused on a plaintiff's reasonable reliance on a defendant's representations. See Learning Annex Holdings, LLC v. Cashflow Techs., Inc., 652 F. App'x 67, 70 (2d Cir. 2016) (summary order) (discussing principle and observing that "plaintiffs asserting a quantum meruit cause of action are not universally required to show that the defendant benefitted from their services"). Accordingly, this argument does not justify dismissal of the Howard Group's complaint.

This conclusion is not the end of the inquiry into whether dismissal of the complaint is warranted. Defendants next argue that the Howard Group has failed to comply with the pleading requirement imposed by RPL § 442-d, which works to bar unlicensed brokerages

- 7 -

from using the courts to recover unpaid real estate commissions. Specifically, RPL § 442-d provides that:

> [n]o person, copartnership, limited liability company or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose.

N.Y. REAL PROP. LAW § 442-d.

Section 442-d is "strictly construed," and "compliance is mandatory." PrinceRidge Grp. LLC v. Oppidan, Inc., 2014 WL 11510256, at *5 (S.D.N.Y. Feb. 4, 2014). This restriction also sweeps broadly—it operates to bar suits in both state and federal courts, and it applies to actions concerning property even located outside New York. Tukas Co. v. Continuum Co., LLC, 2001 WL 114339, at *2 (S.D.N.Y. Feb. 9, 2001) (Chin, D.J.).

In its opposition memorandum, the Howard Group recognizes § 442-d's requirement and attempts to avoid its application. According to plaintiff, it is not seeking to recover an unpaid brokerage commission, just a fair amount of compensation for work it performed at defendants' request.

But the Howard Group's complaint outlines something only fairly described as a brokerage relationship with defendants. The pleading alleges that plaintiff sought out certain real estate based on defendants' representations about its own, specific requirements and then engaged in conduct aimed at facilitating defendants' ultimate purchase of a subset of those properties. Accordingly, § 442-d applies to these facts.

Defendants correctly argue that the Howard Group has not complied with § 442-d's requirement. Plaintiff alleges that it "was engaged in the business of brokering commercial real estate transactions," compl. ¶ 3, but nowhere does not allege that it was a *duly licensed* real estate broker or real estate salesman on the date when the alleged cause of action arose.

The Howard Group offers Kopelowitz & Co., Inc. v Mann, 921 N.Y.S.2d 108 (N.Y. App. Div. 2d Dep't 2011), to argue that § 442-d is inapplicable where a party's services are that of a "finder" rather than a "broker." In Mann, the Appellate Division permitted the plaintiff's quantum meruit claim to proceed in spite of § 442-d because the plaintiff "alleged that he was not acting as a broker, but rather as a potential principal in the acquisition or, alternatively, as a 'finder' intent on introducing [the real estate holding company] to a potential buyer and collecting a 'finder's fee.'" Id.

But the Howard Group does not contend it was a potential principal in the acquisition of the sites in question, and it cannot fairly characterize this suit as an attempt to collect a "finder's fee." To the contrary, plaintiff alleged that it expected compensation in the form of real estate commissions paid by the owners of the sites it identified, not some kind of a fixed sum paid by defendants in exchange for an introduction.

As a result, the Howard Group cannot avoid § 442-d's licensure requirement by characterizing these services as that of a "finder" rather than a traditional "broker." PrinceRidge Grp. LLC v. Oppidan, Inc., 589 F. App'x 38, 39 (2d Cir. 2015) (summary order) (collecting intermediate state appellate cases holding that § 442-d will bar actions where an unlicensed broker characterizes its services in this manner); see also Ling's Props., L.L.C. v Bode, 942 N.Y.S. 194 (N.Y. App. Div. 2d Dep't 2012) (suggesting a plaintiff

may avoid § 442-d's bar where it can "demonstrate that the acquisition of real property was merely incidental to the underlying transaction or that the services rendered were for any purpose other than facilitating the acquisition of real property").

Nor can the Howard Group avoid § 442-d's licensure requirement by characterizing this claim as one sounding in quantum meruit. Am. Prop. Consultants, Ltd. v. Walden Lisle Assocs., L.P., 1997 WL 394617, at *10 (S.D.N.Y. July 14, 1997) ("If unlicensed brokers could collect in quantum meruit fees that are otherwise unenforceable, then the public policy underlying § 442-d would be undermined."). Because plaintiff's factual allegations are insufficient to satisfy § 442-d's requirement, the complaint must be dismissed.

## V. **CONCLUSION**

The Howard Group's complaint will be dismissed, but there is one final matter to discuss. Plaintiff asserts it should be permitted to amend its pleading to comply with RPL § 442-d's pleading requirement in the event defendants' motion to dismiss is granted. In reply to this request, defendants suggest the reason plaintiff has not yet cured this otherwise "simple defect" in pleading is because it cannot actually do so. See Defs.' Reply at 6 n.2.

Upon consideration, this request will be denied. The Howard Group has not submitted a proposed amended complaint in accordance with this District's Local Rule 7.1(a)(4). More importantly, though, plaintiff has not given any meaningful indication that it could correct the pleading defect in a manner consistent with Rule 11(b), which governs representations made the Court. Cf. Thousand Island Park Corp. v. Welser, 314 F. Supp. 3d 391, 400 (N.D.N.Y. 2018).

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED;

2. Plaintiff's request for leave to amend is DENIED; and

3. Plaintiff's complaint is DISMISSED.

The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

*[Signature]*
United States District Judge

Dated: February 15, 2019
Utica, New York.